**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| COMMONWEALTH PLAZA CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation; SUHAIL AL CHALABI; VIRGINIA M. HARDING; and DARREN MOSS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 C 02923 |
| v. | ) ) | Judge Marvin E. Aspen |
| CITY OF CHICAGO, a Municipal Corporation; | ) ) ) | |
| Defendants. | ) | |

**MOTION FOR LEAVE TO CITE SUPPLEMENTAL AUTHORITY**

NOW COMES Proposed Intervenor-Plaintiff Albert C. Hanna ("Hanna"), by his undersigned attorneys, and moves this Honorable Court for leave to cite supplemental authority issued by the United States Court of Appeals for the Seventh Circuit on October 17, 2011, *City of Chicago v. F.E.M.A*, --F.3d--, 2011 WL 4905735 (7th Cir. 2011), which addresses permissive intervention under Rule 24(b). In support thereof, Hanna, who also seeks permissive intervention under Rule 24(b), states as follows:

1.      Hanna's motion to intervene is fully briefed and a status/ruling date is set for October 27, 2011. Plaintiffs and Hanna have also brought a motion, set for October 20, 2011, for oral argument on both the Defendants' motions to dismiss and Hanna's motion to intervene.

2.      An opinion bearing on Hanna's motion to intervene under Rule 24(b) has very recently issued from the United States Court of Appeals for the Seventh Circuit. *City of Chicago v. F.E.M.A*, --F.3d--, 2011 WL 4905735 (7th Cir. 2011) ("*FEMA*"), was issued by the Seventh Circuit on October 17, 2011. That opinion is attached hereto.

3.	In *FEMA*, the Seventh Circuit reversed the district court's denial of six airlines'' single motion to intervene in a dispute between the City of Chicago and FEMA over payment and reimbursement of costs relating to snow removal at O'Hare airport following two severe snow storms.

4.	As discussed at pages 5-6 of the *FEMA* opinion (*5 - *6), the Seventh Circuit reversed the trial court on the grounds that it mistakenly thought that allowing intervention would cause the litigation to become "unwieldy." The Seventh Circuit found that allowing the intervention would avoid a possible second lawsuit and would not complicate or significantly increase discovery. It also noted that as opposed to relying on extrinsic evidence, the claims would be based on contract language. It concluded, "Rule 24(b) is just about economy in litigation." *Id.* at *6.

5.	In the case before this court, Hanna's intervention would possibly avoid a second lawsuit brought by him, and will not complicate or increase whatever limited discovery may be relevant to Count I. Further, similar to *FEMA*, Count I will not be decided on extrinsic evidence, but rather the application of the rule of law to the *Commonwealth Plaza* decision underlying Count I.

WHEREFORE Proposed Intervenor-Plaintiff prays (a) that this Honorable Court grant him leave to cite the supplemental authority of *City of Chicago v. F.E.M.A*, --F.3d--, 2011 WL 4905735 (7th Cir. 2011), and (b) for whatever other and further relief the Court deems appropriate and just.

                              Respectfully submitted,

                              Albert C Hanna,
                              Proposed Intervenor-Plaintiff,

October 19, 2011                          By: /s/ Thomas J. Ramsdell
                                                               _____
                                                                 One of His Attorneys

Thomas J. Ramsdell (# 6209798)
HOWARD & HOWARD ATTORNEYS PLLC
200 S. Michigan Avenue
Suite 1100
Chicago, Illinois 60604
(P) (312) 456-3642

*Counsel for Proposed Intervenor-Plaintiff*

--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))
(Cite as: 2011 WL 4905735 (C.A.7 (Ill.)))

Only the Westlaw citation is currently available.

United States Court of Appeals,
Seventh Circuit.
CITY OF CHICAGO, Plaintiff,
v.
FEDERAL EMERGENCY MANAGEMENT
AGENCY and R. David Paulison, Defendants–Appellees.
Appeal of **United Air Lines, Inc.**, et al., Proposed Intervenors/Appellants.

No. 10–3544.
Argued Sept. 9, 2011.
Decided Oct. 17, 2011.

**Background:** Municipality filed action against Federal Emergency Management Agency (FEMA) to contest "deobligation" order related to expenses associated with snow removal from runways during period of emergency or major disaster. Airlines moved to intervene. The United States District Court for the Northern District of Illinois, Charles R. Norgle, J., denied motion. Airlines appealed.

**Holdings:** The Court of Appeals, **Posner**, Circuit Judge, held that:
(1) airlines had sufficient interest to have Article III standing and
(2) airlines should have been permitted to intervene.

Reversed.

West Headnotes

[1] Federal Civil Procedure 170A €→331

170A Federal Civil Procedure
    170AII Parties
        170AII(H) Intervention
            170AII(H)2 Particular Intervenors
                170Ak331 k. In General. Most Cited Cases

Airlines, as proposed intervenors, had sufficient interest to have Article III standing in action brought by municipality against Federal Emergency Management Agency (FEMA) to contest "deobligation" order related to expenses associated with snow removal from runways during period of emergency or major disaster, since their ability to retain almost $6 million depended on whether court would side with FEMA, court would not do that unless it ruled that agreements that airlines had with municipality entitled municipality to obtain reimbursement of snow removal expenses from airlines, and court would decide that issue only if airlines were parties. Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C.A. §§ 5155(c), 5172(a)(1)(A); 44 C.F.R. § 206.227; Fed.Rules Civ.Proc.Rule 24(a)(2), 28 U.S.C.A.

[2] Federal Civil Procedure 170A €→315

170A Federal Civil Procedure
    170AII Parties
        170AII(H) Intervention
            170AII(H)1 In General
                170Ak314 Grounds and Factors
                    170Ak315 k. Interest of Applicant in General. Most Cited Cases

Article III standing does not suffice to establish the required "interest" for intervention as of right. U.S.C.A. Const.Art. 3; Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

[3] Federal Civil Procedure 170A €→103.2

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or Interest. Most Cited Cases

Remoteness of injury is a standard ground for denying a person the rights of a party to a lawsuit.

[4] Federal Civil Procedure 170A €→311

170A Federal Civil Procedure
    170AII Parties
        170AII(H) Intervention

EXHIBIT A

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))
(Cite as: 2011 WL 4905735 (C.A.7 (Ill.)))

170AII(H)1 In General
170Ak311 k. In General. Most Cited Cases

Limiting principles such as remoteness of injury must be added atop the requirement of Article III standing to place essential limits on the scope of intervention as a matter of right. U.S.C.A. Const.Art. 3; Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

[5] Federal Civil Procedure 170A ⇐331

170A Federal Civil Procedure
　170AII Parties
　　170AII(H) Intervention
　　　170AII(H)2 Particular Intervenors
　　　　170Ak331 k. In General. Most Cited Cases

Airlines should have been permitted to intervene in action brought by municipality against Federal Emergency Management Agency (FEMA) to contest "deobligation" order related to expenses associated with snow removal from runways during period of emergency or major disaster; although airlines might have opportunity in future to litigate claim, municipality might accept "deobligation" in return for modest concessions from FEMA if confident that airlines would reimburse it for those expenses and granting intervention could not have produced net delay. Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C.A. §§ 5155(c), 5172(a)(1)(A); 44 C.F.R. § 206.227; Fed.Rules Civ.Proc.Rule 24(b), 28 U.S.C.A.

[6] Federal Civil Procedure 170A ⇐314.1

170A Federal Civil Procedure
　170AII Parties
　　170AII(H) Intervention
　　　170AII(H)1 In General
　　　　170Ak314 Grounds and Factors
　　　　　170Ak314.1 k. In General. Most Cited Cases

Intervention as a matter of right may be allowed when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground. Fed.Rules Civ.Proc.Rule 24(a), 28 U.S.C.A.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 1:08–cv–04234—Charles R. Norgle, Judge.J. Mark Powell, Attorney, City of Chicago Law Department, Chicago, IL, for Plaintiff.

Sushma Soni, Attorney, Department of Justice, Washington, DC, for Defendants–Appellees.

Samuel B. Isaacson, Attorney, DLA Piper U.S. LLP, Chicago, IL, for Proposed Intervenors/Appellants.

Before CUDAHY, POSNER, and WILLIAMS, Circuit Judges.

POSNER, Circuit Judge.
*1 Six airlines appeal from the denial of their motion to intervene in a suit between the City of Chicago and the Federal Emergency Management Agency (the other defendant, FEMA's director, is a superfluous party). The airlines sought intervention under Fed.R.Civ.P. 24(a) (intervention as a matter of right) and alternatively under Rule 24(b) (permissive intervention).

The airlines are users of the O'Hare and Midway Airports, which are owned by the City of Chicago. Their rights as users are defined by contracts with the City that are called "Use Agreements." In both 1999 and 2000 the airports were crippled for a time by severe snowstorms. As the airports' owner the City was responsible for keeping the runways clear. At the beginning of each fiscal year the City estimates its annual operation and maintenance expenses, which include costs of normal snow removal from airport runways (the City does not attempt to estimate the removal expense it would bear as a result of a snowstorm of unpredictable severity), and the airlines provide the City with their estimate of aircraft traffic for the year. On the basis of these estimates the City calculates a maintenance charge per landing, which the airlines pay monthly. At the end of the year the City compares its incurred maintenance expenses (less payments from non-airline sources) to the amounts the airlines have paid in landing charges, and either charges or reimburses the airlines for the difference between estimated and actual costs.

The City thought it had an outside source of

--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))
(Cite as: 2011 WL 4905735 (C.A.7 (Ill.)))

reimbursement for the snow removal costs caused by the 1999 and 2000 snowstorms—FEMA, which obliged to the tune of almost $6 million. (As provided by FEMA–State Agreement § 4 (Sept. 25, 1999), this was 75 percent of the City's costs. See 42 U.S.C. § 5172(b)(1).) FEMA made the payment on the authority of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 et seq., which authorizes federal financial assistance "to a ... local government for the ... restoration ... of a public facility [including an airport, § 5122(9)(A) ] ... damaged ... by a major disaster." § 5172(a)(1)(A). One form that such damage can take is "snow ... conditions" so severe that they trigger a declaration of an emergency or a major disaster. 44 C.F.R. § 206.227.

Years later FEMA ordered the City to return the money. The order was based on a provision of the Stafford Act called (in a triumph of bureaucratic obfuscation) "deobligation." It provides that "a person receiving Federal assistance for a major disaster or emergency shall be liable to the United States to the extent that such assistance duplicates benefits available to the person for the same purpose from another source." 42 U.S.C. § 5155(c). FEMA asserted that the Use Agreements entitled the City to reimbursement of the cost of the snow removal from the airlines, and that this authorization meant that FEMA's assistance, which had financed the City's removal of the snow, had "duplicate[d] benefits available to the [recipient of FEMA's money—the City] for the same purpose from any other source [the airlines]." Memorandum from Tonda L. Hadley, Field Office Director, Office of Inspector General, Department of Homeland Security, to Edward G. Buikema, FEMA Region V Director, regarding City of Chicago, IL, FEMA Disaster Numbers 3134–EM–IL and 3161–EM–IL (Sept. 26, 2003); Letter from Carlos J. Castillo, FEMA Disaster Assistance Directorate, to David L. Smith, IEMA Chief of Disaster Assistance and Preparedness (May 1, 2008).

*2 After exhausting administrative remedies the City brought the present suit under the Administrative Procedure Act to challenge FEMA's ruling, arguing that "duplicates benefits available ... from another source" means "duplicates benefits available to the recipient of federal financial assistance (the City in this case) under an insurance policy." So a recipient of federal assistance to remedy flood damage who has a private flood insurance policy has to make a claim under the policy and reimburse FEMA if the claim is successful; it can't stick FEMA with the cost just because it wants to keep its insurance premiums from being raised by not making a claim against its insurer. Hawaii v. FEMA, 294 F.3d 1152, 1161 (9th Cir.2002); FEMA, "Duplication of Benefits—Non–Government Funds," Disaster Assistance Policy 9525.3 §§ VII(C), (D), www.fema.gov/government/grant/pa/9525_3.shtm (visited Sept. 26, 2011); FEMA, "Insurance Considerations for Applicants: Disaster Assistance Fact Sheet Number: 9580.3," www.fema.gov/ government/grant/pa/9580—3.shtm (visited Sept. 26, 2011); Kiln Underwriting Ltd. v. Jesuit High School of New Orleans, No. 06–4350, 2008 WL 4724390, at *4–5 (E.D.La. Oct.24, 2008).

But the City is unwilling to put all its eggs in that basket, because another Ninth Circuit case has interpreted section 5155(c) (the "duplicates benefits" provision) to require that the recipient of FEMA assistance have sought reimbursement from a co-owner of property repaired with FEMA funds, Public Utility District No. 1 v. FEMA, 371 F.3d 701, 711–12 (9th Cir.2004), even though the co-owner is not an insurer. So as a backup the City has stipulated with FEMA that the snow removal expenses that the City incurred are covered by a provision of the Use Agreements that makes the airlines responsible for "net operating and maintenance expenses" at the airports. FEMA was willing—indeed happy—to so stipulate because the airlines are the only arguable source of duplicate benefits to the City; without such a source, FEMA is not entitled to reimbursement.

The airlines, naturally, read the provision we quoted from the Use Agreements differently: as limited to the ordinary expenses of an airline's use of an airport, therefore excluding expenses incurred to prevent or overcome a disaster. They add that they're victims of the snowstorms and that FEMA is supposed to pay for disaster relief, not make the victims of the disaster pay. See 42 U.S.C. § 5121(b)(6); Hawaii v. FEMA, supra, 294 F.3d at 1160; Graham v. FEMA, 149 F.3d 997, 1000, 1004–05 (9th Cir.1998). They do not claim they're entitled to direct reimbursement by FEMA for costs they might incur under the Use Agreements, even though those would be disaster costs; were they entitled, this lawsuit would be academic. Section 5172, the provision that enabled the City to obtain financial assistance from FEMA, limits

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))
(Cite as: 2011 WL 4905735 (C.A.7 (Ill.)))

recipients to a state or local government or the private owner or operator of a public facility, such as an airport; the airlines do not operate the City's airports. We imagine that if any other provision would entitle the airlines to financial assistance from FEMA they would have invoked it; as far as we know they have not.

*3 Instead they argue that victims of disaster, unlike insurers, shouldn't be stuck with disaster costs by being deemed sources of reimbursement for the recipient of disaster assistance (in this case the City). The City agrees; it is at loggerheads with the airlines over a different issue, the meaning of "net operating and maintenance expenses" in the Use Agreements; that's the disagreement that triggered the motion to intervene. The airlines hope the City prevails in its argument about the narrow scope of the "duplicates benefits" provision of the Stafford Act; in this respect they are at one with the City and the City adequately represents the airlines' interest. But if FEMA's interpretation of the Stafford Act as making the airlines a duplicate source of benefits prevails (and so FEMA wins this case), the airlines will face a suit by the City to enforce the City's understanding of the Use Agreements. FEMA can prevail in such a suit only if the court rules, in accordance with its stipulation with the City, that the Use Agreements entitle the City to reimbursement from the airlines—for remember that otherwise there would be no alternative source of benefits to trigger the "duplicates benefits" provision.

Whether the likely effect of that stipulation in this litigation entitles the airlines to intervene as a matter of right depends on whether they are claiming "an interest relating to the property or transaction that is the subject of the action" and are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest, unless existing parties adequately represent that interest." Fed.R.Civ.P. 24(a)(2).

[1] There is no doubt that the airlines' interest in the lawsuit satisfies the constitutional requirement of standing; their ability to retain almost $6 million may depend on whether the court sides with FEMA, which the court won't do unless it rules that the Use Agreements entitle the City to obtain reimbursement of the snow removal expenses from the airlines. The district court (or this court on appeal) will decide that issue only if the airlines are parties, because only the airlines contend that the Use Agreements disentitle the City to that reimbursement. If they are not parties, the district court will doubtless accept the stipulation.

[2] Article III standing, however, does not suffice to establish the required Rule 24(a) "interest," as we'll see shortly—though before taking up that matter we should note the conflict among the circuits, left unresolved by the Supreme Court in *Diamond v. Charles*, 476 U.S. 54, 68–69, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986), over whether an intervenor need have Article III standing if, as is true in this case, the existing parties remain in the case. Compare *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir.2009); *Solid Waste Agency v. United States Army Corps of Engineers*, 101 F.3d 503, 507 (7th Cir.1996); *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1023 (8th Cir.2003), and *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C.Cir.2003), holding that the intervenor must have Article III standing even in such a case, with *San Juan County v. United States*, 503 F.3d 1163, 1171–72 (10th Cir.2007) (en banc); *Dillard v. Chilton County Commission*, 495 F.3d 1324, 1336–37 and n. 10 (11th Cir.2007); *United States v. Tennessee*, 260 F.3d 587, 595 (6th Cir.2001) (per curiam), and *Ruiz v. Estelle*, 161 F.3d 814, 829–30 (5th Cir.1998), holding that he need not.

*4 The cases that dispense with the requirement overlook the fact that even if a case is securely within federal jurisdiction by virtue of the stakes of the existing parties, an intervenor may be seeking relief different from that sought by any of the original parties. His presence may turn the case in a new direction—may make it really a new case, *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 530–31 (7th Cir.1988); cf. *City of Cleveland v. Nuclear Regulatory Commission*, 17 F.3d 1515, 1517 (D.C.Cir.1994) (per curiam), and no case can be maintained in a federal court by a party who lacks Article III standing.

[3][4] What's odd about the conflict is that so little is required for Article III standing that if no more were required for intervention as a matter of right, intervention would be too easy and clutter too many lawsuits with too many parties. *Flying J, Inc. v. Van Hollen, supra*, 578 F.3d at 571; *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 911 (D.C.Cir.1977); 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909, pp. 391–92 (3d ed.2007). More must be required. "[T]he effects of a judgment in or a settlement of a lawsuit can ramify

--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))
(Cite as: 2011 WL 4905735 (C.A.7 (Ill.)))

throughout the economy, inflicting hurt difficult to prove on countless strangers to the litigation. Remoteness of injury is a standard ground for denying a person the rights of a party to a lawsuit." *Flying J, Inc. v. Van Hollen, supra,* 578 F.3d at 571. Limiting principles such as remoteness must be added atop the requirement of Article III standing to place essential limits on the scope of intervention as a matter of right.

But since more than Article III standing must be required, why bother to require Article III standing at all? What work does the requirement do? But it could do some work, simply by virtue of the inescapable vagueness of the other limiting principles.

[5] We needn't push the analysis further; none of the limiting principles is applicable to the airlines' attempt to intervene to argue their interpretation of the Use Agreements. And they unquestionably have "an interest relating to the ... transaction that is the subject of the action." But are they "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest"? The determination in this litigation of the meaning of the Use Agreements will have no *preclusive* effect on the airlines if they are not admitted as parties. They will not be bound by anything the court says about the agreements. They'll be free—when the City (if it loses its suit against FEMA) sues them—to try to show that the phrase "net operating and maintenance expenses" excludes expenses incurred in responding to disasters.

[6] But the possibility that the would-be intervenor if refused intervention might have an opportunity in the future to litigate his claim has been held not to be an automatic bar to intervention. *Natural Resources Defense Council v. Costle, supra,* 561 F.2d at 909. Cases allow intervention as a matter of right when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground. *Flying J, Inc. v. Van Hollen, supra,* 578 F.3d at 572–73; *Security Ins. Co. v. Schipporeit, Inc.,* 69 F.3d 1377, 1380–81 (7th Cir.1995); *Reich v. ABC/York–Estes Corp.,* 64 F.3d 316, 321–22 (7th Cir.1995); *Kleissler v. U.S. Forest Service,* 157 F.3d 964, 969–70, 973–74 (3d Cir.1998). *Flying J,* for example, was a suit to invalidate a statute, and the would-be intervenors were the statute's intended beneficiaries and sought intervention to defend the statute on appeal after the state attorney general abandoned its defense. *Reich* permitted intervention as a matter of right so that employees could urge a position that their employer had failed to argue. *Schipporeit* granted intervention so that the intervenor could oppose a default judgment. *Kleissler,* which may be the case closest to the present one, permitted timber companies to intervene in an action to bar logging in a national forest even though they had no logging contracts and merely wanted an opportunity to bid for such contracts in the future. They were allowed to intervene as a matter of right because the timber companies that were defending the right to log might have been tempted to agree to a settlement that excluded the would-be intervenors from competing with them for future logging contracts. In this case too the City, though opposed like the airlines to FEMA, has a conflict of interest with the airlines when it comes to settlement possibilities, since the City might accept "deobligation" in return for modest concessions from FEMA if confident that the airlines would reimburse it. In light of *Kleissler* the airlines may have a sufficient interest to be entitled to intervene, especially since *Kleissler* treated "the benefits derived from consolidation of disputes into one proceeding" as a factor favoring intervention as a matter of right. 157 F.3d at 970. It is present here as well.

*5 But we need not decide whether the airlines were entitled to intervene as a matter of right; for they should have been permitted to intervene under Fed.R.Civ.P. 24(b), and so clear is this that we believe the district court was unreasonable to rule otherwise. The rule provides that the court "may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact"—a requirement obviously satisfied by the airlines' motion to intervene—unless intervention would "unduly delay or prejudice the adjudication of the original parties' rights." The district judge did not mention those grounds but in his very brief discussion of permissive intervention pitched his denial on the ground that admitting six airlines as parties would make the litigation "unwieldy." He may not have realized that the six airlines would be litigating as if they were a single party; they filed a single motion to intervene and have promised to litigate as if they were a single airline.

Granting the airlines' motion to intervene could not have produced a net delay when one considers that allowing the airlines into this litigation might head off

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))
(Cite as: 2011 WL 4905735 (C.A.7 (Ill.)))

a second suit. True, the airlines may seek some very limited discovery. FEMA contends that the airlines have already reimbursed the City for the 75 percent of the snow removal costs that FEMA paid, and the City contests this. (The airlines must know, yet take no position on the issue.) Conceivably the parties may need discovery to verify the accuracy of this contention. While the contention is irrelevant to FEMA's claim for reimbursement, since the existence of duplicate benefits turns on their availability rather than on actual receipt, Hawaii v. FEMA, supra, 294 F.3d at 1159, it is relevant to the damages to which the City would be entitled if the court ruled that the Use Agreements cover the City's snow removal costs, because the City's damages would be reduced by whatever reimbursement it had already received. But discovery is very unlikely to extend to any other issue in the case. The airlines are seeking judicial review of agency action, and in such litigation the record is compiled in the agency and the room for evidence-taking in the district court, the role of which is appellate, is extremely limited. Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985); School District of Wisconsin Dells v. Z.S., 295 F.3d 671, 675 (7th Cir.2002); Safe Extensions, Inc. v. FAA, 509 F.3d 593, 599 (D.C.Cir.2007).

What is true is that insofar as the airlines want to establish the meaning of the relevant provision of the Use Agreements, they will if allowed to intervene be litigating an original action rather than seeking judicial review of an agency determination; but they don't want to conduct discovery on that issue. Might the City want to conduct discovery? Conceivably, but it is notable that the City supports the airlines' motion for intervention and has not bothered to file a brief in this appeal. It may be indifferent between litigating over the contract in the present proceeding and (should it lose) in a separate suit against the airlines. And neither the district judge in denying intervention nor FEMA in opposing it suggested that there might be discovery concerning the meaning of the contract. Most disputes over the meaning of written contracts are resolved on the basis of the language of the contract and the purpose that can be inferred from that language and from the contract's subject matter, rather than on the basis, or with the aid, of extrinsic evidence. This may be such a case, but maybe not, since the Use Agreements do not contain integration clauses. Still, we have no basis for thinking that it would be as efficient to litigate this three-cornered dispute in two lawsuits rather than one.

*6 We close with a cautionary note: courts must be careful not to collapse the two inquiries—the inquiry under Rule 24(a) and the inquiry under Rule 24(b)—into the single question whether intervention is sensible from a practical standpoint in consideration of such concerns as remoteness and of the economies and diseconomies of consolidation. More is at stake in a Rule 24(a) inquiry: the would-be intervenor is claiming that a significant interest of his is likely to be impaired if he is not permitted to intervene. Rule 24(b) is just about economy in litigation. Because less is at stake for a party seeking intervention under Rule 24(b) than under Rule 24(a), it is not surprising that in some circuits, including our own, the standard of appellate review is more deferential ("abuse of discretion") under Rule 24(b). Compare Ligas ex rel. Foster v. Maram, 478 F.3d 771, 773, 775–76 (7th Cir.2007); Sokaogon Chippewa Community v. Babbitt, 214 F.3d 941, 949 (7th Cir.2000), and Medical Liability Mutual Ins. Co. v. Alan Curtis LLC, 485 F.3d 1006, 1008 (8th Cir.2007), with Ungar v. Arafat, 634 F.3d 46, 51 (1st Cir.2011); Oneida Indian Nation v. Madison County, 605 F.3d 149, 161 (2d Cir.2010), and Liberty Mutual Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 n. 4 (3d Cir.2005). (Odd that the circuits can't agree.)

And since preclusion is not a condition of intervention under Rule 24(a) and analysis under that rule also includes consideration of the practical effect of denying intervention, reversal in this case might actually be easier under Rule 24(a) than under Rule 24(b), since the standard of appellate review is less deferential under the former. But all that matters in this case is that whatever the precise standard of review, the order of the district court must be reversed with directions to grant the motion to intervene.

REVERSED.

C.A.7 (Ill.),2011.
City of Chicago v. Federal Emergency Management Agency
--- F.3d ----, 2011 WL 4905735 (C.A.7 (Ill.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.