**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMONWEALTH PLAZA CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation; SUHAIL AL CHALABI; VIRGINIA M. HARDING; and DARREN MOSS,<br><br>    Plaintiffs,<br><br> vs.<br><br>CITY OF CHICAGO, a Municipal Corporation,<br><br>    Defendant,<br><br> and<br><br>SAINT JOSEPH HOSPITAL, an Illinois Not-For-Profit Corporation,<br><br>    Defendant-Intervenor. | Case No. 11 C 02923 |

**MEMORANDUM AND ORDER**

MARVIN E. ASPEN, District Judge:

  Presently before us are each defendant's motion to dismiss, for a variety of jurisdictional and procedural reasons, an action brought under the Fourteenth Amendment of the Constitution of the United States and the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983. For the reasons set forth below, we grant the motions.

**BACKGROUND**

  Resurrection Health Care Corporation ("Resurrection") and Saint Joseph Hospital ("Saint Joseph") own and/or control property on West Diversey Parkway, Chicago. Upon the request of

1

Resurrection and Saint Joseph, the City of Chicago rezoned the property to Institutional Planned Development 1019 ("IPD 1019"). Suhail al Chalabi, as Vice President of Commonwealth Plaza, Virginia M. Harding, and Darren Moss (collectively "Plaintiffs") are owners of separate property on West Diversey Parkway within 250 feet of the rezoned property. (Am. Compl. ¶¶ 3, 4.) Plaintiffs filed this action against the City of Chicago and served Resurrection and Saint Joseph with notice of the filing of the complaint. (*Id*. ¶¶ 5, 6.) Saint Joseph's subsequent motion to intervene was granted on July 14, 2004. (Dkt. No. 27.)

The complaint contains three counts. Count I challenges the Cook County, Illinois law that allows a home rule municipality to violate its own laws when adopting a zoning ordinance. Plaintiffs request this Court to enter a declaratory judgment ruling that this practice constitutes a deprivation of constitutional due process. (Am. Compl. ¶ 1.) Counts II and III argue that the Chicago Zoning Ordinance amendment establishing IPD 1019—which was found by the Circuit Court of Cook County to be inconsistent with the Chicago Zoning Code—is a per se violation of Plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment, and is therefore void. (*Id*.)

Defendants filed separate motions to dismiss all counts based on F.R.C.P 12(b)(1) and 12(b)(6). For the reasons set out below, the motions to dismiss are granted.[1]

---

[1] Two subsequent motions were also filed in this case. First, a motion to intervene as defendant was filed by Albert C. Hanna. (Dkt. No. 34.) In the motion, Hanna clearly stated that he did not anticipate filing briefs in connection with the current motion to dismiss. (*Id*. ¶ 9.) As the current case is hereby dismissed on grounds of subject matter jurisdiction and *res judicata*, Hanna's motion is dismissed as moot.
  Second, Plaintiffs and Hanna filed a motion for oral arguments to address Hanna's motion to intervene and Defendants' motions to dismiss. (Dkt. No. 55.) Those motions was originally taken under advisement. (Dkt. No. 59.) We now deny these motions as well.

## BACKGROUND AND PROCEDURAL HISTORY

After extensive meetings and public hearings, the City of Chicago City Council revised the Chicago Zoning Ordinance on November 1, 2004. (Am. Compl. ¶ 7.) In May 2006, Resurrection filed for an Institutional Planned Development ("IPD") amendment to the Chicago Zoning Ordinance to rezone its property. (*Id*. ¶ 10.) The Chicago Plan Commission and the Zoning Committee of the City Council of Chicago recommended approving the change after public hearings at which Plaintiffs were noticed, appeared, and filed objections. (*Id*. ¶ 11.) The City Council approved the amendment, establishing IPD 1019, on July 28, 2006. (*Id*.)

In October 2006, Plaintiffs filed suit in the Circuit Court of Cook County alleging that the rezoning violated Plaintiffs' constitutional rights under the Due Process Clause of the United States and Illinois Constitutions. (*Id*. ¶ 12.) The Circuit Court of Cook County initially ruled that IPD 1019 violated the Chicago Zoning Ordinance and was thus void. (*Id*. ¶ 13.) However, on reconsideration, the court confirmed that IPD 1019 was inconsistent with the Chicago Zoning Code, but held that such violation did not make IPD 1019 void. (*Id*. ¶ 14.) On August 20, 2008, the Circuit Court of Cook County granted Defendants' motion for partial summary judgment indicating that the noncompliance did not support invalidating the IPD. (Compl. Ex. 9 (Order Granting Mot. for Partial Summ. J. Aug. 20, 2008).) The order included a finding under Illinois Supreme Court Rule 304(a) that the issue could be immediately appealed. (*Id*.) Plaintiffs timely appealed. (Am. Compl. ¶ 15.) The Illinois Appellate Court confirmed that "the IPD ordinance enacted by the city council in this case is not rendered unconstitutional simply because this municipality, a home rule unit, violated its own self-imposed ordinance in enacting the IPD ordinance." *Condo. Assoc. of Commonwealth Plaza v. City of Chicago,* 399 Ill. App. 3d 32, 38,

924 N.E.2d 596, 602 (1st Dist. 2010).

The Illinois Supreme Court denied Plaintiffs' Petition for Leave to Appeal. (Compl. Ex. 12 (Sup. Ct. Denial).) On January 12, 2011, the parties agreed to dismiss the action remaining in the circuit court. (*Id*. Ex. 13 (Agreed Order).) Plaintiffs filed this law suit in federal court on May 2, 2011. (Dkt. No. 1.) Defendants, in turn, moved to dismiss all counts.

## STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(1) and (b)(6) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949–50 (2009) (extending *Twombly* from antitrust to litigation generally and stating that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task"); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In evaluating a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* at 1949–50.

Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182,

1188 (7th Cir. 1986). In reviewing a Rule 12(b)(1) motion, we may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

Defendants jointly assert four bases for dismissal: (1) Count I cannot be heard by this court pursuant to the *Rooker-Feldman* doctrine; (2) all counts are barred by *res judicata*; (3) all counts are barred by collateral estoppel; and (4) Counts II and III are untimely under the two-year statute of limitations period applicable to § 1983 actions. As we can only hear cases over which we have subject matter jurisdiction, we start by addressing the *Rooker-Feldman* doctrine.

**I. Rooker-Feldman**

"Simply put, the *Rooker-Feldman* doctrine 'precludes lower federal court jurisdiction over claims seeking review of state court judgments . . . [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.'" *Taylor v. Fed'l Nat'l Mortgage Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (quoting *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)); *see Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011). This narrow doctrine deprives us of jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005); *see Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 942 (N.D. Ill. 2005).

"District courts have no jurisdiction 'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.'" *Leaf v. Supreme Ct. of Wis.*, 979 F.2d 589, 596 (7th Cir. 1992) (citing *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S. Ct. 1303, 1317). It is further settled that § 1983 is not a back door to permit federal court review of state judicial decisions. *See Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993); *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984) ("[A] plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action."). With these principles in mind, we turn to evaluate whether *Rooker-Feldman* precludes Plaintiffs' Count I.

Plaintiffs cannot deny that their injury here is caused by the state court's judgment upholding the rezoning. In fact, absent that state court ruling, Plaintiffs would not have the injury they now seek to redress. *See Holt v. Lake Cty Board of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (dismissing case because injury was caused by the state court judgment). As noted above, the Seventh Circuit has clearly stated that "a litigant may not attempt to circumvent the effect of *Rooker-Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights actions." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999); *see also Holt*, 408 F.3d at 336. As such, we have no jurisdiction over the claim.

Plaintiffs seek to avoid dismissal in two different ways. First, they argue that *Rooker-*

6

*Feldman* cannot apply because there was no final judgment in the state court. This argument is dismissed below in our *res judicata* discussion. We simply observe here that we find that the Circuit Court of Cook County ruling was a final ruling on the merits. Second, Plaintiffs argue that the *Rooker-Feldman* doctrine cannot apply because Count I seeks review of a "legislative" ruling of the Illinois Appellate Court. We turn now to this second argument.

 Federal courts lack the authority to review only final determinations of state judicial proceedings, but can review legislative and administrative actions taken by state courts. *Feldman*, 460 U.S. at 476, 103 S. Ct. at 1311–12. "[T]he *Feldman* Court held that United States district courts may review a state court's nonjudicial action for constitutional error, but not a state court's judicial decision whether or not constitutional error is alleged." *Ritter*, 922 F.2d at 753 (citing *Feldman*, 460 U.S. at 470, 103 S. Ct. at 1308). "A crucial question in this case, therefore, is whether the proceedings before the [other court] were judicial in nature." *Feldman*, 460 U.S. at 476, 103 S. Ct. at 1311. Specifically, we must decide whether Plaintiffs are asking us to review the Illinois court's judgment through use of our § 1983 jurisdiction or are instead mounting a general challenge to the Illinois court's rule that "a home rule municipality may violate its own, duly enacted laws in adopting or amending a zoning ordinance." (Compl. ¶ 22.)

 Plaintiffs claim that they are "not seeking review of a state court judgment 'as applied' to them," rather they are seeking review "only of the 'legislative' ruling of the Illinois Appellate Court that 'home rule' municipalities are free to violate their own laws at-will." (Resp. at 3.) Plaintiffs argue that the Illinois court acted legislatively because its decision was one of first impression and affects more than Plaintiffs in this case. To support this contention, Plaintiffs point out that the City of Chicago motioned to have the decision published and that the City of

7

Chicago has subsequently referred to the ruling while defending similar suits. (*Id*. at 4.) However, in making this argument, Plaintiffs mischaracterize the distinction between legislative and judicial proceedings. "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. . . . Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. . . ." *Feldman*, 460 U.S. at 477, 102 S. Ct. at 1312 (citing *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226, 29 S. Ct. 67, 69 (1908)).

In determining whether the Illinois Appellate Court acted in its judicial function, we find the language used in the court's opinion dispositive: "We agree with defendants that *Landmarks* [*Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 531 N.E.2d 9 (Ill. 1988)] and its progeny are controlling in this case. . . . [T]he underlying complaint is still Chicago's failure to comply with its own self-imposed regulations in approving the hospital defendants' IPD and, as such, is insufficient to evade the application of *Landmarks* to the present case." *Condo. Assoc.,* 399 Ill. App. 3d at 38, 324 N.E.2d at 602. The court continued by explaining that *Landmarks* and *Gasoline Dealers Association v. City of Chicago*, 119 Ill. 2d 391, 519 N.E.2d 447 (Ill. 1988), "both stand for the proposition that the mere failure of a home rule municipality to follow its own self-imposed regulations in enacting an ordinance is not, in and of itself, a constitutional violation." *Condo. Assoc.,* 399 Ill. App. 3d at 43, 324 N.E.2d at 606. The Illinois Appellate Court did not create a new rule of law. Instead, the court enforced liabilities as they stood based on present fact and its views of then-existing precedential case law. *See Feldman* 460 U.S. at 479, 103 S. Ct. at 1313. Court actions will not be considered legislative in nature

merely because they clarify existing law and are relied upon by future litigants, such is the nature of the common law.

Plaintiffs' alternative argument similarly fails. Plaintiffs argue that they are not complaining of injuries suffered from the trial court's refusal to void IPD No. 1019, but instead are complaining of "the current and prospective injury to property owners deprived of 14th Amendment due process rights if the Appellate Court rule of law is permitted to stand." (Resp. at 4–5.) As we have already decided that the Illinois court's action was judicial in nature, Plaintiffs' request would require us to effectively adjudge whether the state court's ruling was constitutional. Therefore, Defendants' motion to dismiss Count I for lack of subject matter jurisdiction is granted.

## II. Res Judicata

We turn now to Counts II and III. Defendants argue that both counts should be dismissed pursuant to *res judicata*. A state-court judgment has the same claim preclusive effect in federal court that the judgment would have in state court. *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 85, 104 S. Ct. 892, 898 (1984). Therefore, "[w]e apply the preclusion law of the state that rendered the judgment to determine whether res judicata controls this case." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Under Illinois law, *res judicata* precludes a claim if three requirements are satisfied: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Hicks*, 479 F.3d at 471 (citing *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 390, 757 N.E.2d 471, 477 (Ill. 2001)) (internal quotations omitted).

9

In this case, elements two and three are clearly satisfied. The same essential parties are involved in this action as in Plaintiffs' state court action. The City of Chicago, or entities in privity with the City, and Saint Joseph were named defendants in the state court action. (Compl. Ex. 6 (State Ct. Compl.).) Similarly, there is an identity of the causes of action. "[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (Ill. 1998). The facts underlying this lawsuit are identical to those presented in the state court suit, and both cases arise out of the same situation, namely enactment of IPD 1019. In both cases Plaintiffs alleged that their due process rights were violated by the IPD ordinance. Plaintiffs do not assert that either of these elements are lacking. The only question, then, is whether there was a final judgment on the merits. Defendants characterize the order by the Circuit Court of Cook County granting summary judgment to Defendants and the order by the Illinois Appellate Court affirming the trial court's order as final orders. (City Mem. at 8; Saint Joseph Reply at 3.) Plaintiffs, however, vigorously argue that there was never a final judgment and contend that the doctrine should not be applied for equitable reasons. (Resp. at 6–10.) We address each of these arguments in turn.

*A. Final Order*

For purposes of *res judicata*, "a final order is one that 'disposes of the rights of the parties either with respect to the entire controversy or some definite and separate portion thereof.'" *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1069, 890 N.E.2d 964, 970 (2nd Dist. 2008) (citing *Arachnid, Inc. v. Beall*, 210 Ill. App. 3d 1096, 1103, 569 N.E.2d 1273, 1277 (2nd

10

Dist.1991)). If only a portion of a case is dismissed, Illinois' rule against claim splitting prohibits plaintiffs from dismissing their remaining claims and then instituting a new action at a later time. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340, 665 N.E.2d 1199, 1207 (Ill. 1996) ("The principle that *res judicata* prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding."); *Hudson v. City of Chicago*, 228 Ill. 2d 462, 482, 889 N.E.2d 210, 222 (Ill. 2008) ("If a plaintiff . . . voluntarily dismiss[es] and refile[s] a claim after another part of the cause of action has gone to final judgment in a previous case, that plaintiff will have engaged in claim-splitting."). The Illinois Supreme Court explained that "a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill.2d at 473; *see also Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 901, 901 N.E.2d 986, 995 (1st Dist. 2009).

Nonetheless, Illinois courts have held that "dismissal of certain allegations under a single theory of recovery does not terminate litigation between the parties on the merits or dispose of the rights of the parties on a separate branch of the controversy." *Piagentini*, 387 Ill. App. 3d at 894, 901 N.E.2d at 994 (citing *Rice v. Burnley*, 230 Ill. App. 3d 987, 992–93, 596 N.E.2d 105, 107–08 (1st Dist. 1992)). In other words, if a court disposes of only certain allegations and does not address a "definite and separate portion" of the case, Illinois litigants are able to voluntarily dismiss a claim and then refile at a later time. *Id*. Therefore, we must determine whether the Circuit Court of Cook County order on August 20, 2008 addressed a complete theory of recovery. *See Williams v. Ingalls Mem'l Hosp.*, 408 Ill. App. 3d 360, 368, 944 N.E.2d 421, 430

11

(1st Dist. 2011) (*"Piagentini* makes clear that we are to determine whether any allegations remain supporting a theory of recovery, not simply a count.").

Plaintiffs' position on its face appears somewhat tenuous considering they relied on the finality of the trial court's judgment when they appealed the ruling to the Illinois Appellate Court. Relying on the trial court's Rule 304(a)[2] finding, Plaintiffs moved to stay the trial court proceedings and appealed their claim. In other words, Plaintiffs treated the ruling as final when it was in their benefit to do so. They now ask us to ignore their own reliance on the Rule 304 language, arguing "the fact that the parties did not recognize the defect in the Rule 304(a) order, and proceeded with an appeal, should not alter the non-final nature of the ruling." (Resp. at 8.)

Now, Plaintiffs rely strongly on *Piagentini* and argue that there was never a final judgment because the Circuit Court of Cook County ruled on only one of the allegations raised by Plaintiffs, not an entire theory of recovery. In *Piagentini*, the plaintiff brought actions in negligence and strict liability. Both counts alleged seatbelt defects as well as insufficient stability design. 387 Ill. App. 3d at 888–89, 901 N.E.2d at 989–90. On summary judgment, the court dismissed the case, but indicated that plaintiff could replead the claims pertaining to defective seatbelts. After reinstituting the case, the court held that *res judicata* was not a bar to litigation: "the agreed order granting partial summary judgment on certain allegations under the theory of negligence and certain allegations under the theory of strict liability was not final

---

[2] Rule 304(a) reads, in relevant part, "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. Sup. Ct. R. 304(a).

because allegations still remained under each base for recovery."[3] *Id*. 387 Ill. App. 3d at 894, 901 N.E.2d at 994.

Structuring their argument around the reasoning in *Piagentini*, Plaintiffs assert that they only raised one claim in the state court proceedings—a due process violation—but sought to prove this claim through three different allegations—"[1] non-compliance and direct contravention of both procedural and substantive provisions of the Chicago Zoning Ordinance, [2] procedural and substantive due process infractions in depriving property owners of benefits conferred by agreements between the parties memorialized in prior zoning concessions, and [3] specific due process deprivations in the course and conduct of the hearing." (Resp. at 7–8 (internal citations omitted).) Therefore, they argue, when the state court granted Defendants' motion for partial summary judgment, it was merely ruling on one allegation and did not finally adjudge any count prior to voluntary dismissal. We cannot agree with this characterization.

Viewing the complaint leniently in favor of Plaintiffs, we find that they raised at least two claims in the Circuit Court of Cook County. It is insignificant that Plaintiffs did not label multiple counts in their state court complaint. Courts do not look to formatting. *See In re Estate of Stark*, 374 Ill. App. 3d 516, 523, 872 N.E.2d 1011, 1017 (4th Dist. 2007) (collecting cases and noting that what constitutes an individual claim is a "somewhat amorphous concept"). Instead, courts have held that counts are distinct when "the grounds for recovery under the various counts derive from different statutes or common law doctrines [] or when the various theories of

---

[3] The court also noted that the order specifically gave plaintiff 28 days to replead and that an order granting leave to amend indicates there has been no final disposition of the case and should thus not be considered final. *Piagentini*, 387 Ill. App. 3d at 894, 901 N.E.2d at 994. Because we find that the Circuit Court of Cook County order is final, we do not address the relative weight of this consideration.

13

recovery require 'different elements . . . to establish a proper claim' or involve 'differing standards of plaintiff's conduct which will bar recovery.'" *Heinrich v. Peobody Intern. Corp.*, 99 Ill. 2d. 344, 348, 459 N.E.2d 935, 938 (Ill. 1984) (citing *Freeman v. White Way Sign & Maint. Co.*, 82 Ill. App. 3d 884, 891, 403 N.E.2d 495, 500 (1st Dist. 1980)).

It is clear that the majority of the litigation in the state courts focused on the first and second "allegations" asserted by Plaintiffs. Specifically, the first opinion by the trial court determined that IDP 1019 was not in compliance with the Chicago Zoning Ordinance, and the trial court's subsequent summary judgment order as well as the Illinois Appellate Court opinion focused on whether such a violation constituted due process violations. (Compl. Ex. 7 (Order Granting Mot. for Partial Summ. J. Dec. 14, 2007); Compl. Ex. 9 (Order Granting Mot. for Partial Summ. J. Aug. 20, 2008); *Condo. Assoc.,* 399 Ill. App. 3d 32, 924 N.E.2d 596.) Neither court addressed whether Plaintiffs were deprived of due process in the course of the hearing. Such an omission was warranted based on the obvious difference between the claims. The first two "allegations" require the courts to focus on the zoning amendment as passed and the interaction between the new zoning amendments and the Chicago Zoning Ordinance. "Allegation" three, on the other hand, would require that Plaintiffs demonstrate events that took place at the relevant hearing to establish the specific violations alleged. (Compl. Ex. 6 ¶¶ 28, 29 (State Ct. Compl.) (alleging e.g. failure to give objective and unbiased opinions).) As such, we find that the claim based on the hearing is a distinct theory of recovery, necessitating different elements of proof from the claim based on violation of the city ordinance. *See Heinrich*, 99 Ill. 2d. at 348, 459 N.E.2d at 938; *Williams*, 408 Ill. App. 3d at 369, 944 N.E.2d at 430–31.

Finally, the Circuit Court of Cook County ruled that "there is no genuine issue of

material fact remaining as to whether such a lack of compliance, as a matter of law, violates any provision of a state or federal statute or constitution, including the due process clauses of both the United States and Illinois Constitutions, as well as 65 ILCS 5/11-13-25, solely on account of its purported non-compliance with the Chicago Zoning Ordinance." (Compl. Ex. 9 ¶ 1 (Order Granting Mot. for Partial Summ. J. Aug. 20, 2008).) Thus, the first two counts were decided in full, and only the questions pertaining directly to the hearing were pending at the time of voluntary dismissal.

Having found that the trial court issued a final order on a complete theory of recovery, we find that there was a final judgment on the merits entered by a court of competent jurisdiction.[4] As such, all three elements of *res judicata* have been established, and Counts II and III must be dismissed.

### B. Equitable Considerations

Plaintiffs argue that their claim is exempt from *res judicata* effect because Defendants agreed that claim preclusion would not apply.[5] Even if we take as true the assertion that the state court action was dismissed by agreement of the parties, (Resp. at 9), we do not find that this

---

[4] Plaintiffs also assert that no final judgment was issued because "the action was dismissed by agreement of the parties and without prejudice." (Resp. at 7 (citing Compl. Ex. 13 (Agreed Order)).) However, the Agreed Order does not indicate that the dismissal was "without prejudice." (Compl. Ex. 13 (Agreed Order).) The order originally included the phrase "with prejudice," but that language was crossed out before the judge signed the order. (*Id*.; Saint Joseph Reply at 5.) The final order simply reads: "the case is dismissed, each party to bear its own costs, fees, and expenses." (Compl. Ex. 13 (Agreed Order).) Thus, the order does not address prejudice, and we refuse to read such language into the order.

[5] There are various exceptions to claim splitting set forth in § 26(1) of the Restatement (Second) of Judgment. Plaintiffs rely only on the first exception: "the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein." *Rein*, 172 Ill.2d at 341, 665 N.E.2d at 1207. (Resp. at 5–6.)

15

agreement included relaxing the prohibition against claim splitting. Plaintiffs rely on *Williams*, but the reasoning in that case cannot be applied here. In *Williams,* the Appellate Court of Illinois addressed a situation where a plaintiff had brought suit against a hospital alleging apparent agency and *respondeat superior* liability. 408 Ill. App. 3d at 361, 944 N.E.2d at 425. The court first decided that *respondeat superior* and apparent agency are two distinct theories of recovery; therefore, the grant of summary judgment on the issue of apparent agency was a final order and *res judicata* barred any matter that might have been raised in that suit. *Id*. at 370–72, 944 N.E.2d at 431–33. Nonetheless, the court found that the exception to claim splitting should apply and a second action should not be barred because, despite the lack of explicit language, defendants tacitly agreed or acquiesced to splitting the claims. *Id*. at 374, 944 N.E.2d at 434. Notably, however, the lower court in *Williams* had dismissed the claim of liability for apparent agency, and plaintiffs sought to pursue a claim based on *respondeat superior*. The court was therefore able to read the record before it, including pleadings and lower court orders, as impliedly leaving open the claim based on actual agency. *Id*. The situation here is inapposite. The trial court entered a finding on the precise issue that Plaintiffs try to raise today. Applying the reasoning of *Williams*, we may be able to agree that Defendants acquiesced to refiling of the claim challenging the hearing (though we do not make such a finding today), but we cannot say that Defendants acquiesced to relitigating the same issues for which they already received a summary judgment.

Finally, we decline Plaintiffs' offer to rely on other equitable considerations to avoid giving affect to the preclusion principles. While *res judicata* need not be "technically applied if to do so would create inequitable and unjust results," *Rein*, 172 Ill. 2d at 341, 665 N.E.2d at

16

1207, we do not find that our ruling will lead to such an outcome. As mentioned above, Plaintiffs already received appellate court review in the state courts. We do not believe that allowing litigation to start over in federal court is necessary to prevent inequitable and unjust results. Instead, we find that the equities require us to enforce the preclusive affect of *res judicata*. *See Arvia v. Madigan*, 209 Ill. 2d 520, 533, 809 N.E.2d 88, 97 (Ill. 2004) ("*Res judicata* promotes judicial economy by preventing repetitive litigation and protects parties from being forced to bear the unjust burden of relitigating essentially the same case.").

## CONCLUSION

For the reasons stated above, we grant Defendants motion to dismiss all counts.[6] It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: November 17, 2011

---

[6] As all counts were dismissed pursuant to *Rooker-Feldman* and *res judicata*, we need not address Defendants' alternative arguments.

17